**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.

**YANCEY WHITE,**

    **Defendant.**

**Case No. 1:20-cr-159-1**
**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Defendant Yancey White is before the Court on his motion requesting release on bond pending trial in this matter (Doc. 25). For the reasons more fully discussed below, the Court **DENIES** the motion and **ORDERS** that White remain in pre-trial detention.

## FACTUAL BACKGROUND[1]

This case began when local officers executed a search warrant on a Hamilton County residence on August 24, 2020. (Doc. 2, #40,[2] ¶ 5). The officers obtained the warrant after investigating Yancey White, who lived there along with his wife, Kelsey Klopp, and who was suspected of narcotics trafficking. (*Id.*).

---

[1] These "facts" come from the Complaint and the Pretrial Services Report in this matter. (Docs. 2, 14). As such, they are not "facts," but rather allegations. Nonetheless, under 18 U.S.C. § 3142(g), the Court considers the "nature and circumstances of the offense charged." Thus, the Court recounts the allegations here. In doing so, however, the Court notes that its reference to these allegations should not be interpreted as an indication that the Court has found the allegations to be true. And, at all times, the Court remains mindful that the analysis of detention issues shall not "be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

[2] Refers to PageID#.

While executing the search warrant, officers detained White, who was leaving the residence in a vehicle. Officers also detained Klopp and found she was carrying a Glock Model 43, 9mm caliber pistol in her purse. (*Id.*). During their search of the residence, officers recovered a measurable amount of suspected narcotics along with other indicia of drug trafficking. (*Id.*, #41, ¶ 6). In addition, officers recovered the following firearms: (1) Glock, Model 26, 9mm caliber, pistol; (2) Glock Model 26Gen4, 9mm caliber, pistol; (3) FN Hershel, Model Five-Seven, 5.7x28 caliber, pistol; and (4) DPMS, Model A-15, multi-caliber rifle. (*Id.*).

Searching the residence also led officers to identify a storage facility that White and Klopp utilized in a separate location. After obtaining a search warrant for that facility, officers conducted a search and recovered the following firearms: (1) Heckler & Koch, Model 45c, .45 caliber, pistol; (2) Heckler & Koch, Model USP Tactical, .45 caliber, pistol; (3) Sig Sauer, Model P226, .40 caliber, pistol; (4) Taurus, Model PT111G2A, 9mm caliber, pistol; (5) Glock, Model 36, .45 caliber, pistol; (6) Glock, Model 42, .380 caliber, pistol; (7) Smith & Wesson, Model M&P9, 9mm caliber, pistol; and (8) Century Arms Inc., Model M70AB2 Sporter, 7.62x39mm caliber, rifle. (*Id.*).

Before these searches, and his subsequent arrest in this matter, White had already been convicted of multiple serious crimes, including felonious assault and trafficking cocaine. His criminal record extends as far back as 2004. (*See* Pretrial Services Report, Doc. 14, #59–62).

After White's arrest, the Magistrate Judge held a detention hearing on November 24, 2020. Based on that hearing, the Magistrate Judge ordered White

detained pending trial. The Magistrate Judge found by a preponderance of the evidence that White's release would pose a risk of nonappearance at future court proceedings. And, by clear and convincing evidence, the Magistrate Judge found that White's release would pose a risk of harm to the public. The Magistrate Judge stressed that the evidence of dangerousness was significant, noting: (1) the four firearms discovered at White's residence; (2) the fentanyl and paraphernalia indicative of drug trafficking that officers also found at the residence; and (3) the eight firearms recovered after a search of the storage locker that White rented with Klopp. Other factors counseling in favor of detention included White's criminal record, the fact that he lacked stable employment, and his past failure to appear for court hearings. (Order of Detention, Doc. 12, #54).

On December 17, 2020, White was indicted on several drug and firearms charges: (1) distribution and attempt to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; (2) operation of a drug involved premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; (3) possession of five firearms in furtherance of offense in violation of 18 U.S.C. § 924(c)(1); (4) possession (of those same five firearms) by a prohibited person in violation of 18 U.S.C. § 922(g)(1); and (5) possession by a prohibited person (for the eight storage locker firearms) also in violation of 18 U.S.C. § 922(g)(1). (*See* Indictment, Doc. 18).

On January 25, 2021, White filed the instant Motion for Bond (Doc. 25). In that Motion, White said he was requesting a hearing in which he planned to present evidence of "a set of circumstances sufficient to release" him subject to conditions (*Id.*

3

at #93). Hinting at what he intended to argue, he went on to say that the Covid-19 rate in Butler County had increased to such an extent that he was very "likely to contract the disease." (*Id.*) White also said that his father would assist him in posting a reasonable bond and ensuring his compliance with release conditions. (*Id.*). Accordingly, on March 10, 2021, as White requested, the Court held a hearing on the Motion. Counsel for both White and the government presented argument and the Motion is now ripe for the Court's decision.

## LAW AND ANALYSIS

The "default position of the law" is that "a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). At the same time, the Court must balance the law's concern for the liberty of a potentially innocent defendant with the need to protect the community and preserve the integrity of judicial proceedings. Therefore, if there is no condition or combination of conditions that will both (1) "reasonably assure the appearance of" the defendant at future proceedings, and (2) not "endanger the safety of any other person or the community," a court must deny pretrial bond. 18 U.S.C. § 3142(e).

In addition to those general background principles, there are occasions when presumptions come into play with regard to the detention analysis. Of particular relevance here, under § 3142(e)(3), a rebuttable presumption arises as to both factors listed above if the judicial officer finds that "there is probable cause to believe that the person committed" one of several listed offenses. Two such offenses are at issue here. One is "an offense for which a maximum term of imprisonment of ten years or

more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A). The other is "an offense under section 924(c)." 18 U.S.C. § 3142(e)(3)(B). The indictment charges White with at least one of each. And, given that a grand jury returned the indictment, probable cause is established. *See Stone*, 608 F.3d at 945. Thus, the Court finds (and the parties do not dispute) that a presumption in favor of pre-trial detention applies.

That presumption, though, is not the end of the story, as the statute also provides that the presumption is "[s]ubject to rebuttal by the person." 18 U.S.C. § 1342(e)(3). In that regard, as *Stone* explained, the detainee's only burden is one of production. The burden is "not heavy," and is satisfied if the defendant provides "at least some evidence" showing that he does not pose a danger to the community or a risk of flight. *Stone*, 608 F.3d at 945. If the defendant makes that showing, then the government "retains the burden of persuasion." *Id*. At the same time, "[e]ven when a defendant satisfies [her] burden of production … the 'presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.'" *Id*. (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). That is because the presumption is "not simply an evidentiary tool," but also "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id*. Thus, to rebut the presumption, as a general matter, a defendant should present "special features" showing that his case is "outside the congressional paradigm." *Id*. With that burden-shifting framework in mind, the statute also identifies the four factors that the Court

5

"shall … take into account" in making that detention determination: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the [defendant]"; (3) "the history and characteristics of the [defendant]"; and (4) "the nature and seriousness of the danger to any person or the community" posed by the defendant's release. 18 U.S.C. § 3142(g).

At the hearing, White largely sought to meet his burden of production by highlighting certain aspects of the pending charges and his criminal record. He did *not* develop an argument relating to his chances of contracting Covid-19 while detained in Butler County. White has therefore waived any such argument. Instead, White first noted that he has roughly the same charges pending in state court as he does in this case, yet the state court apparently was willing to release him on bond. Second, he pointed out that none of the charges against him are for violent offenses. Third, White emphasized that, although his criminal record stretches back almost twenty years, there were significant gaps of time between convictions. Fourth, and perhaps most importantly, White indicated that he had an upcoming doctor appointment relating to an issue with his salivary glands that might be cancerous. White expressed his concern that he would be unable to attend that appointment while detained.

The Court finds it doubtful that White can meet his burden of production based on these arguments. The Court acknowledges that the state court was willing to release White on bond with roughly the same charges pending against him in that court. But it is not clear whether state law provides for a similar presumption of

detention as federal law provides here. And even if it does, White offered little detail about the state court's reasons for its decision. The state court's decision thus caries little (if any) weight with this Court.

Second, White is correct that none of the charges against him are violent taken in isolation. But recall that White is charged with, among other things, possessing 13 guns, some in furtherance of serious drug-trafficking offenses. While these may not be violent offenses per se, they carry a significant potential for violence. In any event, White served nearly eight years in prison for felonious assault, which undoubtedly is a violent offense. (*See* Pretrial Services Report, Doc. 14, #60). That conviction alone gives the Court great pause about White's potential for violence if he is released on bond.

Third, it is true that there are some gaps in White's criminal record. But they are generally few and far between. White has been charged or convicted of various offenses (almost always drug related) on a regular basis going all the way back to 2004. During that time, his longest gap between criminal convictions was December 4, 2007 to May 4, 2017. But that gap is perhaps explained by the fact that he was incarcerated for nearly 8 of those years, and under post-release control for roughly an additional year. (*See Id.* at #60–61). A gap of criminal activity explained almost entirely by incarceration or post-release control is not much of a gap at all.

Fourth, the Court takes very seriously White's concerns about being able to attend scheduled doctor appointments, especially as they relate to a potentially pre-cancerous condition. But the Court received assurances, both at the hearing and

since, that White has received, and will continue to receive, medical attention regarding the concerns that he raised. The Court thus finds that White does *not* need to be released on bond to ensure he receives adequate medical treatment. Should that turn out not to be the case, the Court stands ready to order appropriate relief at the appropriate time.

Again, given these flaws in White's arguments, it seems unlikely that he has met his burden of production. At the end of the day, though, the Court need not fully answer that question. That is because the Court concludes that, even if White has met his burden of production, a review of the 18 U.S.C. § 3142(g) factors shows that the government also has met its burden of persuasion—at least in light of "Congress's substantive judgment that [the] particular class[] of offender[] [at issue here] should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 945. In other words, White has failed to show that his case is "outside the congressional paradigm" with regard to the four identified factors.

As for the nature and circumstances of the offense, the conduct alleged in the Complaint is undoubtedly serious. White is charged with dealing in fentanyl and cocaine, two drugs known to have disastrous impacts on communities across Ohio. He is also charged with operating a drug involved premises for the purpose of distributing a controlled substance, illegally possessing *thirteen* guns, and allegedly using some of them in furtherance of drug trafficking. White's drug charges are serious enough on their own and almost certainly sufficient to trigger the statutory presumption in favor of detention. What is more, they are combined with charges for

using firearms in connection with that conduct, which itself is an independent basis creating a presumption of detention. On top of all that is the number of guns involved. Charges for possessing *thirteen* guns, while the defendant was prohibited from possessing even one, favor detention. To be sure, at this stage, these are all merely allegations, and White is presumed innocent. But the Court is instructed to consider the offenses *charged*, *see* 18 U.S.C. § 3142(g)(1), and here those charges are quite serious.

The weight of the evidence supports that same conclusion. The officers recovered a measurable amount of narcotics and various indicia of drug trafficking at White's residence during the search. Among the paraphernalia were scales, baggies, and "cut" material that could be used to mix with narcotics, resulting in a greater amount of drugs to sell. As mentioned, officers recovered four guns inside of White's home, one in his wife's purse as she was being detained, and eight firearms, pursuant to a separate search warrant, in a storage locker that White utilized. This seems like strong evidence to the Court.

Similarly, White's personal characteristics and criminal history favor pretrial detention. The statute instructs the Court to take account of, inter alia, the person's "past conduct," his "history relating to drug or alcohol abuse," and his "criminal history." 18 U.S.C. § 3142(g)(3)(A). The Court is also to consider the defendant's "record concerning appearance at court proceedings." *Id.* All of these factors weigh heavily against White. Again, White's criminal history dates to 2004 with few gaps in between, other than a lengthy period of incarceration. Many of White's convictions

9

were for drug possession. In addition, White has been convicted of serious offenses, including felonious assault and trafficking in cocaine. He also has a record of failing to appear in court when required.

For many of the same reasons, the last factor— "the nature and seriousness of the danger to any person or the community"—likewise favors detention. When officers arrested White, he was residing in what appeared to be drug-related premises, armed with several firearms, and apparently had several more stashed away in a storage locker. That is a dangerous combination. Moreover, the number of firearms found at both the residence and storage locker (13 total, including the one found on Klopp) also contributes to the Court's assessment of White's dangerousness.

Given the presumption of detention that Congress mandates, coupled with the information available to the Court on the four factors identified in 18 U.S.C. § 3142(g), the Court concludes that it cannot grant White's Motion.

## CONCLUSION

For the reasons above, the Court **DENIES** White's Motion for Bond (Doc. 25).

**SO ORDERED.**

March 26, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**